**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| H & Q PROPERTIES, INC., a Nebraska corporation, MARK HOULTON and JOHN QUANDAHL, | ) ) ) | Case No. 8:13-cv-38 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **COMPLAINT, PLACE OF TRIAL** |
| | ) | **DESIGNATION AND JURY DEMAND** |
| DAVID E. DOLL, DOUBLE D PROPERTIES, L.L.C., a Nebraska limited liability company, DDE, INC., a Nebraska corporation, f/k/a Double D. Excavating, Inc., HNGC, INC., a Nebraska corporation, f/k/a Double D Hook-N-Go Containers, Inc., NEBRASKA LOWBOY SERVICES, INC., a Nebraska corporation, DOUBLE D EXCAVATING, INC., an Iowa corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

COME NOW, Plaintiffs, H & Q Properties, Inc., Mark Houlton and John Quandahl, and for their various causes of action against Defendants, state and allege as follows:

**THE PARTIES**

1.     That Plaintiff H & Q Properties, Inc. (hereinafter "H&Q") is a corporation organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 10602 Ridgemont Circle in Sarpy County, Nebraska.

2.     That Plaintiff Mark Houlton (hereinafter "Houlton") is an individual and a resident of Sarpy County, Nebraska.

3.     That Plaintiff John Quandahl is an individual and a resident of Sarpy County, Nebraska.

4.     That H&Q is owned and managed by Houlton and Quandahl.

5.      That Defendant David E. Doll (hereinafter "Doll") is an individual and a resident of Douglas County, Nebraska and is believed to be residing at 8501 North 180th Street in Bennington, Douglas County, Nebraska.

6.      That Defendant Double D Properties, L.L.C. (hereinafter "DD Properties") is a limited liability company organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 7071 North 87th Street in Omaha, Douglas County, Nebraska and whose principal office is identified as 7071 North 87th Street Omaha, Nebraska 68122 and whose registered agent and address are David E. Doll, 8501 North 180th Street, Bennington, Nebraska 68007.

7.      That Defendant DDE, Inc. (hereinafter "DDE") is a corporation organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 7071 North 87th Street in Omaha, Douglas County, Nebraska and whose principal office is identified as 8501 North 180th Street, Bennington, Nebraska 68007 and whose registered agent and address are James E. Lang, 11718 Nicholas Street, Suite 101, Omaha, Nebraska 68154.

8.      That between its initial organization and the filing of "Articles of Amendment to Articles of Incorporation of Double D. Excavating, Inc. dated March 1, 2010" and filed with the Nebraska Secretary of State on or about May 4, 2010, DDE was formerly known as Double D Excavating, Inc.

9.      That Defendant HNGC, Inc. (hereinafter "HNGC") is a corporation organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 7071 North 87th Street in Omaha, Douglas County, Nebraska and whose registered agent and address are David E. Doll, 7071 North 87th Street, Omaha, Nebraska 68122.

10.     That between its initial organization and the filing of "Articles of Amendment to Articles of Incorporation of Double D Hook-N-Go Containers, Inc." dated March 1, 2010 and filed with the Nebraska Secretary of State on or about May 4, 2010, HNGC was formerly known as Double D Hook-N-Go Containers, Inc.

11.     That Defendant Nebraska Lowboy Service, Inc. (hereinafter "NLS") is a corporation organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 7071 North 87th Street in Omaha, Douglas County, Nebraska and whose registered agent and address are David E. Doll, 615 Vernon Avenue, Omaha, Nebraska 68134.

12.     That Defendant Double D. Excavating, Inc. (hereinafter "DDE-IA") is a corporation organized and existing pursuant to the laws of the State of Iowa with its identified home office located at 1721 2nd Street in Coralville, Johnson County, Iowa and whose registered agent and address are Agent, Inc., 1721 2nd Street, Coralville, Iowa 52241.

13.     That DD Properties, DDE, HNGC, NLS and DDE-IA (hereinafter, collectively, the "Doll Companies") are owned and managed by Doll.

## JURISDICTION AND VENUE

14.     That the Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 1331, as the claims brought under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., (hereinafter "RICO") raise a federal question.

15.     That Plaintiffs invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for jurisdiction over all other claims which form part of the same case or controversy and which are so related to claims in the present action which provide for the Court's original jurisdiction.

16.     That venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a), (b)(1) and (b)(2) as Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

17.     That additionally, venue is proper in this judicial district pursuant to 18 U.S.C. § 1965(a) as each Defendant resides within this District, is found within this District, has an agent within this District and/or transacts his or its affairs within this District.

18.     That the Court has personal jurisdiction over each Defendant hereto, as each Defendant is resident within the District of Nebraska.

19.     That venue is proper in the District of Nebraska pursuant to 28 U.S.C. § 1391(b)(1) and (2), as each Defendant hereto resides in the District of Nebraska and a substantial part of the events or omissions giving rise to Plaintiffs' claims herein occurred in the District of Nebraska, and pursuant to 18 U.S.C. § 1965(a) as each Defendant hereto has an office and an agent in the District of Nebraska and transacts business here in the District of Nebraska.

## GENERAL ALLEGATIONS

20.     That Double D Excavating, L.L.C. (hereinafter the "LLC") is a limited liability company organized and existing pursuant to the laws of the State of Nebraska with its principal place of business located at 7071 North 87th Street in Omaha, Douglas County, Nebraska and whose principal office is identified as 8550 Whitmore Circle, Omaha, Nebraska 68122 and whose registered agent and address are Robert F. Peterson, 11718 Nicholas Street, Suite 101, Omaha, Nebraska 68130.

21.     That between its initial organization and the filing of "Amended Articles of Organization Limited Liability Company" dated April 9, 2010 and filed with the Nebraska

Secretary of State on or about May 4, 2010, the LLC was formerly known as Doll Excavating, L.L.C.

22.     That on or about May 23, 2011, as well as at all relevant times previous thereto, each of the Four Thousand Six Hundred (4,600) issued and outstanding membership units of the LLC were owned as follows:

     a.  Two Thousand Three Hundred Fifty (2,350) membership units of the LLC owned by H&Q; and

     b.  Two Thousand Two Hundred Fifty (2,250) membership units of the LLC owned by DD Properties, DDE and HNGC.

23.     That on or about May 23, 2011, the parties entered into an agreement to restructure the assets and liabilities of the LLC for the purpose of the LLC's acquisition of H&Q's membership units in the LLC (hereinafter the "Agreement to Restructure").

24.     That a true and correct copy of the Agreement to Restructure is attached hereto, labeled Exhibit "A" and incorporated herein by such reference.

25.     That contrary to the terms and conditions of the Agreement to Restructure (Exhibit A hereto), Doll and the Doll Companies failed to meet and/or perform their obligations outlined in the Agreement to Restructure prior to August 1, 2011, and that, as a result of said failure, a dispute arose between the parties regarding the liquidation of the LLC both in a commercially reasonable manner and under the control, management and direction of H&Q.

26.     That on or about October 19, 2011, the parties entered into various agreements in an effort to resolve their disputes, which agreements included, *inter alia*, the following:

     a.  An Addendum to Agreement to Restructure (hereinafter the "Addendum to Agreement"), a true and correct copy of which is attached hereto, labeled Exhibit "B" and incorporated herein by such reference;

     b.  An Escrow Agreement with respect to a $100,000.00 certificate of deposit belonging to H&Q (hereinafter the "CD Escrow Agreement"),

a true and correct copy of which is attached hereto, labeled Exhibit "C" and incorporated herein by such reference;

c. A Warranty Deed (hereinafter the "Warranty Deed"), a true and correct copy of which is attached hereto, labeled Exhibit "D" and incorporated herein by such reference;

d. An Escrow Agreement with respect to an anticipated lot split of certain real property (hereinafter the "Lot Escrow Agreement"), a true and correct copy of which is attached hereto, labeled Exhibit "E" and incorporated herein by such reference;

e. A Promissory Note (hereinafter the "Promissory Note"), a true and correct copy of which is attached hereto, labeled Exhibit "F" and incorporated herein by such reference;

f. An Indemnification (hereinafter the "Indemnification"), a true and correct copy of which is attached hereto, labeled Exhibit "G" and incorporated herein by such reference.

27.    That at some time during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs and, upon information and belief, prior to the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto), Defendants opened account number 121224 at the Malvern Trust & Savings Bank located in Malvern, Mills County, Iowa in the name of "David E. Doll and Double D Excavating" (hereinafter "Account No. 121224").

28.    That both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Defendants also opened account number 119992 at the Malvern Trust & Savings Bank located in Malvern, Mills County, Iowa in the name of "David E. Doll" only (hereinafter "Account No. 119992").

29.    That at numerous times and upon multiple occasions both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to

Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Defendants intercepted payments from the LLC's customers made directly to and owned by the LLC (hereinafter the "Intercepted Payments") and subsequently deposited the Intercepted Payments into Account No. 121224 and that upon information and belief, the majority of such deposits were accomplished via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail.

     30.    That the Intercepted Payments deposited into Account No. 121224 also include, but are not limited to, checks totaling at least $315,485.20 as follows:

    a.    A deposit on June 1, 2011 of nine checks made payable to and owned by the LLC totaling $1,550.00 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

    b.    A deposit on June 7, 2011 of six checks made payable to and owned by the LLC totaling $895.00 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

    c.    A deposit on June 9, 2011 of one check made payable to and owned by the LLC totaling $10,000.00 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

    d.    A deposit on June 13, 2011 of one check made payable to and owned by the LLC totaling $2,449.20 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

    e.    A deposit on June 28, 2011 of one check made payable to and owned by the LLC totaling $20,000.00 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

    f.    A deposit on June 29, 2011 of one check made payable to and owned by the LLC totaling $121,072.50 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail;

g.  A deposit on July 19, 2011 of one check made payable to and owned by the LLC totaling $74,801.50 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail; and

h.  A deposit on July 26, 2011 of one check made payable to and owned by the LLC totaling $84,717.00 accomplished, upon information and belief, via interstate mailing from Defendants to the Malvern Trust & Savings Bank utilizing the U.S. mail.

31.  That at numerous times and upon multiple occasions both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Defendants transferred the Intercepted Payments deposited in Account No. 121224 to Account No. 119992 and that the majority of such transfer transactions were accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication.

32.  That the transfer of Intercepted Payments deposited in Account No. 121224 to Account No. 119992 also includes, but is not limited to, the following:

a.  A transfer of funds on June 3, 2011 in the amount of $21,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

b.  A transfer of funds on June 8, 2011 in the amount of $28,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

c.  A transfer of funds on June 9, 2011 in the amount of $10,300.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

d.  A transfer of funds on June 20, 2011 in the amount of $30,500.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

e.  A transfer of funds on June 23, 2011 in the amount of $34,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

f.  A transfer of funds on June 29, 2011 in the amount of $163,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication;

g.  A transfer of funds on July 18, 2011 in the amount of $29,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication; and

h.  A transfer of funds on July 19, 2011 in the amount of $75,000.00 accomplished via interstate telephone call placed from Defendants to the Malvern Trust & Savings Bank utilizing wire communication.

33.     That at numerous times and upon multiple occasions both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Defendants co-mingled the Intercepted Payments transferred to Account No. 119992 with funds belonging to Defendants and used the Intercepted Payments transferred to Account No. 119992 for Doll's personal use and in order to pay Doll's personal expenses.

34.     That at numerous times and upon multiple occasions both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Defendants co-mingled the Intercepted Payments transferred to Account No. 119992 with funds belonging to Defendants and used the Intercepted Payments transferred to Account No. 119992 to pay the Doll Companies' operating expenses.

35.     That the use of Intercepted Payments transferred to Account No. 119992 for Doll's personal use and in order to pay Doll's personal expenses, as well as to pay the Doll Companies' operating expenses, include, but are not limited to, the following:

    a.  Check No. 1338 dated May 28, 2011 made payable to Pinnacle Bank in the amount of $3,654.00 and drawn upon Account No. 119992;

    b.  Check No. 1343 dated June 7, 2011 made payable to Pinnacle Bank in the amount of $10,000.00 and drawn upon Account No. 119992;

    c.  Check No. 1349 dated June 15, 2011 made payable to NLS in the amount of $3,500.00 and drawn upon Account No. 119992;

    d.  Check No. 1351 dated June 15, 2011 made payable to Dave Steier in the amount of $600.00 and drawn upon Account No. 119992;

    e.  Check No. 1372 dated June 28, 2011 made payable to DDE in the amount of $10,000.00 and drawn upon Account No. 119992;

    f.  Check No. 1374 dated June 26, 2011 made payable to Chad Peterson in the amount of $2,500.00 and drawn upon Account No. 119992;

    g.  Check No. 1382 dated June 30, 2011 made payable to Steier Law LLC in the amount of $1,355.00 and drawn upon Account No. 119992;

    h.  Check No. 1383 dated July 1, 2011 made payable to NLS in the amount of $3,000.00 and drawn upon Account No. 119992;

    i.  Check No. 1384 dated July 2, 2011 made payable to Nick Doll in the amount of $2,000.00 and drawn upon Account No. 119992;

    j.  Check No. 1385 dated July 6, 2011 made payable to Dave Doll Property in the amount of $4,000.00 and drawn upon Account No. 119992; and

    k.  Check No. 1420 dated July 22, 2011 made payable to DDE Inc. in the amount of $25,000.00 and drawn upon Account No. 119992

36.     That at various times both before and after the parties' entry into the Agreement to Restructure (Exhibit A hereto) and the Addendum to Agreement to Restructure (Exhibit B hereto) and during H&Q's ownership of a majority of membership units within the LLC and while Defendants were engaged in the diversion of the Intercepted Funds for Defendants' use, all as identified in the foregoing paragraphs, Doll repeatedly represented to Plaintiffs that the LLC

was having serious financial problems, that the LLC could not meet its operating expenses, that the LLC needed financial assistance from Plaintiffs in order to be able to continue operations and that Plaintiffs would be required to contribute further capital to the LLC in order to protect Plaintiff's investment in same (hereinafter the "Representations").

37.    That in addition to making the Representations to Plaintiffs, Defendants contributed a portion of the Intercepted Funds back to the LLC and further represented such contributions to be fresh capital contributions made by Doll to the LLC (hereinafter the "Contribution Representations").

38.    That the Representations and the Contribution Representations were false and that Defendants knew that the Representations and the Contribution Representations were false.

39.    That in light of Defendants' diversion and use of the Intercepted Payments, all as identified in the foregoing paragraphs, the Representations and the Contribution Representations were fraudulent and/or were made with such reckless disregard for the truth that they constitute fraud.

40.    That Defendants knew that Plaintiffs would rely upon the Representations and the Contribution Representations.

41.    That at various times and in reasonable reliance upon the Representations and the Contribution Representations, Plaintiffs contributed further capital to the LLC.

42.    That in reasonable reliance upon the Representations and the Contribution Representations and upon the continued failures of the LLC to meet its operating costs as a result of the Intercepted Payments, Plaintiffs, ultimately, entered into the Agreement to Restructure.

43.    That Defendants, through their interactions with the Malvern Trust & Savings Bank identified above, have knowingly executed a scheme or artifice to obtain any of the

moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

44.     That Defendants, through their interactions with the Malvern Trust & Savings Bank identified above, have knowingly and/or intentionally executed and participated in a scheme to defraud Plaintiffs and others with the use of interstate mails and with the use of interstate transmission facilities in furtherance of the scheme.

45.     That as a result of the actions and misrepresentations of Defendants identified above, Plaintiffs have suffered damages.

## FIRST CAUSE OF ACTION
### Violation of Racketeer Influenced Corrupt
### Organizations Act, 18 U.S.C. § 1961 et seq. – Bank Fraud

46.     That for the First Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 45 of this Complaint, above, as if fully set forth herein.

47.     That at all relevant time hereto, Plaintiffs were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property" and 18 U.S.C. § 1964(c) as "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962."

48.     That at all relevant times hereto, Defendants were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property."

49.     That at all relevant times, Defendants' operation of the LLC constitutes an "enterprise" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

50.     That at all relevant times, Defendants further formed associations with each other and with others to include, but not be limited to, the Malvern Trust & Savings Bank, for the purpose of defrauding, Plaintiffs and that such associations were "enterprises" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

51.     That each of the enterprises referenced in the foregoing paragraphs had the common or shared purpose of enriching Defendants at the expense of Plaintiffs through misrepresentations made to Plaintiffs and the conversion of the LLC's assets and income.

52.     That at all times relevant hereto, each of the enterprises referenced in the foregoing paragraphs were engaged in, and its activities affected, interstate commerce within the meaning of RICO pursuant to 18 U.S.C. § 1962(c).

53.     That at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, associated with the enterprises referenced in the foregoing paragraphs and conducted or participated, either directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and in violation of RICO pursuant to 18 U.S.C. § 1962(c).

54.     That specifically at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, engaged in "racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(1) by engaging in the various predicate acts set forth in greater detail above, and constituting a violation of 18 U.S.C. § 1344 (bank fraud) and

that Defendants, as well as other conspirators both known and unknown to Plaintiffs, each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

55.     That the acts of racketeering activity referred to in the previous paragraph constitute a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and that the acts alleged were related to each other by virtue of common participants, similar victims, a common method of commission and the common purpose and common result of defrauding Plaintiffs and enriching Defendants, as well as their co-conspirators, all at the expense of Plaintiffs and while concealing such fraudulent activities and that this fraudulent scheme began sometime prior to May 23, 2011 and continues through the filing of this Complaint.

56.     That Defendants, as well as other conspirators both known and unknown to Plaintiffs, knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise, through a pattern of racketeering activity, as described in greater detail above.

57.     That as a result of the acts and omissions of Defendant identified above, Plaintiffs have been damaged in various manners, including, but not limited to, the amount of their continued capital contributions to the LLC as a result of the Intercepted Payments, the Representations and the Contribution Representations, and the resulting reduction in value of the LLC and the loss of Plaintiffs' investment therein as a result of the Intercepted Payments, the Representations, the Contribution Representations and ultimately, the Agreement to Restructure.

58.     That pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times the actual damages they suffered as a result of the violation of RICO by Defendants and for the cost of this lawsuit, including reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray for the Court's entry of judgment against Defendants, jointly and severally, on the allegations set forth in the First Cause of Action, above, for their general damages in an amount to be proven at trial, threefold damages pursuant to 18 U.S.C. § 1964(c), as well as pre- and post-judgment interest thereon at the highest legal rate, for the costs of this action and any attorneys fees incurred, an accounting of and the imposition of a constructive trust and/or an equitable lien upon Defendants' ill-gotten gains and for such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION
### Violation of Racketeer Influenced Corrupt
### Organizations Act, 18 U.S.C. § 1961 et seq. – Mail Fraud

59.     That for the Second Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 58 of this Complaint, above, as if fully set forth herein.

60.     That at all relevant time hereto, Plaintiffs were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property" and 18 U.S.C. § 1964(c) as "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962."

61.     That at all relevant times hereto, Defendants were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property."

62.     That at all relevant times, Defendants' operation of the LLC constitutes an "enterprise" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

63.     That at all relevant times, Defendants further formed associations with each other and with others to include, but not be limited to, the Malvern Trust & Savings Bank, for the purpose of defrauding, Plaintiffs and that such associations were "enterprises" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

64.     That each of the enterprises referenced in the foregoing paragraphs had the common or shared purpose of enriching Defendants at the expense of Plaintiffs through misrepresentations made to Plaintiffs and the conversion of the LLC's assets and income.

65.     That at all times relevant hereto, each of the enterprises referenced in the foregoing paragraphs were engaged in, and its activities affected, interstate commerce within the meaning of RICO pursuant to 18 U.S.C. § 1962(c).

66.     That at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, associated with the enterprises referenced in the foregoing paragraphs and conducted or participated, either directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and in violation of RICO pursuant to 18 U.S.C. § 1962(c).

67.     That specifically at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, engaged in "racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(1) by engaging in the various predicate acts set forth in greater detail above, and constituting a violation of 18 U.S.C. § 1341 (mail fraud) and

that Defendants, as well as other conspirators both known and unknown to Plaintiffs, each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

68.     That the acts of racketeering activity referred to in the previous paragraph constitute a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and that the acts alleged were related to each other by virtue of common participants, similar victims, a common method of commission and the common purpose and common result of defrauding Plaintiffs and enriching Defendants, as well as their co-conspirators, all at the expense of Plaintiffs and while concealing such fraudulent activities and that this fraudulent scheme began sometime prior to May 23, 2011 and continues through the filing of this Complaint.

69.     That Defendants, as well as other conspirators both known and unknown to Plaintiffs, knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise, through a pattern of racketeering activity, as described in greater detail above.

70.     That as a result of the acts and omissions of Defendant identified above, Plaintiffs have been damaged in various manners, including, but not limited to, the amount of their continued capital contributions to the LLC as a result of the Intercepted Payments, the Representations and the Contribution Representations, and the resulting reduction in value of the LLC and the loss of Plaintiffs' investment therein as a result of the Intercepted Payments, the Representations, the Contribution Representations and ultimately, the Agreement to Restructure.

71.     That pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times the actual damages they suffered as a result of the violation of RICO by Defendants and for the cost of this lawsuit, including reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray for the Court's entry of judgment against Defendants, jointly and severally, on the allegations set forth in the Second Cause of Action, above, for their general damages in an amount to be proven at trial, threefold damages pursuant to 18 U.S.C. § 1964(c), as well as pre- and post-judgment interest thereon at the highest legal rate, for the costs of this action and any attorneys fees incurred, an accounting of and the imposition of a constructive trust and/or an equitable lien upon Defendants' ill-gotten gains and for such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION
### Violation of Racketeer Influenced Corrupt
### Organizations Act, 18 U.S.C. § 1961 et seq. – Wire Fraud

72.     That for the Third Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 71 of this Complaint, above, as if fully set forth herein.

73.     That at all relevant time hereto, Plaintiffs were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property" and 18 U.S.C. § 1964(c) as "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962."

74.     That at all relevant times hereto, Defendants were "persons" within the meaning of RICO pursuant to 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property."

75.     That at all relevant times, Defendants' operation of the LLC constitutes an "enterprise" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

76.     That at all relevant times, Defendants further formed associations with each other and with others to include, but not be limited to, the Malvern Trust & Savings Bank, for the purpose of defrauding, Plaintiffs and that such associations were "enterprises" within the meaning of RICO pursuant to 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

77.     That each of the enterprises referenced in the foregoing paragraphs had the common or shared purpose of enriching Defendants at the expense of Plaintiffs through misrepresentations made to Plaintiffs and the conversion of the LLC's assets and income.

78.     That at all times relevant hereto, each of the enterprises referenced in the foregoing paragraphs were engaged in, and its activities affected, interstate commerce within the meaning of RICO pursuant to 18 U.S.C. § 1962(c).

79.     That at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, associated with the enterprises referenced in the foregoing paragraphs and conducted or participated, either directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and in violation of RICO pursuant to 18 U.S.C. § 1962(c).

80.     That specifically at all times relevant hereto, Defendants, as well as other conspirators both known and unknown to Plaintiffs, engaged in "racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(1) by engaging in the various predicate acts set forth in greater detail above, and constituting a violation of 18 U.S.C. § 1343 (wire fraud) and

that Defendants, as well as other conspirators both known and unknown to Plaintiffs, each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

81.     That the acts of racketeering activity referred to in the previous paragraph constitute a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and that the acts alleged were related to each other by virtue of common participants, similar victims, a common method of commission and the common purpose and common result of defrauding Plaintiffs and enriching Defendants, as well as their co-conspirators, all at the expense of Plaintiffs and while concealing such fraudulent activities and that this fraudulent scheme began sometime prior to May 23, 2011 and continues through the filing of this Complaint.

82.     That Defendants, as well as other conspirators both known and unknown to Plaintiffs, knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise, through a pattern of racketeering activity, as described in greater detail above.

83.     That as a result of the acts and omissions of Defendant identified above, Plaintiffs have been damaged in various manners, including, but not limited to, the amount of their continued capital contributions to the LLC as a result of the Intercepted Payments, the Representations and the Contribution Representations, and the resulting reduction in value of the LLC and the loss of Plaintiffs' investment therein as a result of the Intercepted Payments, the Representations, the Contribution Representations and ultimately, the Agreement to Restructure.

84.     That pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three times the actual damages they suffered as a result of the violation of RICO by Defendants and for the cost of this lawsuit, including reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray for the Court's entry of judgment against Defendants, jointly and severally, on the allegations set forth in the Third Cause of Action, above, for their general damages in an amount to be proven at trial, threefold damages pursuant to 18 U.S.C. § 1964(c), as well as pre- and post-judgment interest thereon at the highest legal rate, for the costs of this action and any attorneys fees incurred, an accounting of and the imposition of a constructive trust and/or an equitable lien upon Defendants' ill-gotten gains and for such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
### Breach of Contract

85.     That for the fourth cause of action asserted against Doll, H&Q incorporates paragraphs 1 through 84 of this Complaint, above, as if fully set forth herein.

86.     That on or about October 19, 2011, Doll executed the Promissory Note in favor of H&Q in the principal amount of $139,443.33 together with interest thereon at the rate of eight percent (8%) per annum, payable in monthly installments of Three Thousand Three Hundred Thirty-Three and 33/100 Dollars ($3,333.33).

87.     That Doll is in default under the terms of the Promissory Note as a result of his failure and/or refusal to make the payments required thereunder and that Doll is indebted to H&Q, as of January 8, 2013, in the principal amount of One Hundred Thirty Thousand One Hundred Seventy and 73/100 Dollars ($130,170.73) and accrued interest at the default rate of twelve percent (12%) in the amount of Twelve Thousand Sixty-Five Dollars and 96/100 Dollars

($12,065.96) and that interest continues to accrue on the unpaid principal amount at a per diem rate of $42.7871.

88.     That H&Q has made due demand upon Doll for payment of all amounts due as set forth in the foregoing paragraph, but that no payments whatsoever have been forthcoming from Doll.

WHEREFORE, H&Q prays for the Court's entry of judgment against Doll on the allegations set forth in the Fourth Cause of Action, above, in the principal amount of One Hundred Thirty Thousand One Hundred Seventy and 73/100 Dollars ($130,170.73), accrued interest thereon as of January 8, 2013 in the amount of Twelve Thousand Sixty-Five Dollars and 96/100 Dollars ($12,065.96), for interest that continues to accrue on the unpaid principal amount after November 14, 2012 at a per diem rate of $42.7871, for the costs of this action and attorneys fees incurred, all as provided for in the Promissory Note, and for such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION
### Indemnification

89.     That for the Fifth Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 88 of this Complaint, above, as if fully set forth herein.

90.     That on or about October 19, 2011, Defendants each executed the Indemnification in favor of Plaintiffs, jointly and severally agreeing to indemnify and hold Plaintiffs harmless from and against any liabilities, causes of action, claims or demands arising out of or related to the operations of the LLC, including liabilities, causes of action, claims or demands made by bonding companies.

91.     That on or about July 9, 2012 and as a result of the LLC's failure and/or refusal to pay for work performed by Consolidated Concrete, L.L.C. on behalf of the LLC, Granite Re, Inc.

(hereinafter "Granite Re"), as a bonding company, has filed a claim against, *inter alia*, Plaintiffs in the District Court of Douglas County, Nebraska captioned *Consolidated Concrete, L.L.C., Plaintiff, v. Double D Excavating, L.L.C., Defendant/Crossclaim-Defendant, Granite Re, Inc., Defendant/Crossclaimant, v. Double D Excavating, Inc., Double D Properties, L.L.C., Fuel Exprss, L.L.C., Nebraska Lowboy Service, Inc., Double D Hook N Go Containers, Inc. Double D Lawn Service, HQ Properties, Inc., David E. Doll, Suzanne M. Doll, John P. Quandahl, Catherine L. Quandahl, Mark M. Houlton and Lisa R. Houlton, Third-Party Defendants, v. Meyers-Carlisle-Leapley Construction Company, Inc., and Western Surety Company, Third Party Defendants* and found at Case No. CI 12-614 (hereinafter "Granite Re's Claims") asserting damages against Plaintiffs as a result of the LLC's failure and/or refusal in the amount of One Hundred Sixty-Nine Thousand Nine Hundred Forty-Three Dollars and Twenty Cents ($169,943.20), plus pre-judgment interest thereon.

92.     That without admitting the truth of the underlying allegations thereof, a true and correct copy of the Cross-Claim and Third-Party Complaint filed by Granite Re in Granite Re's Claim is attached hereto, labeled Exhibit "H" and incorporated herein by such reference.

93.     That Plaintiff provided Defendants with notice of Granite Re's Claim and the accompanying service of summons upon Plaintiffs therein, but that Defendants have failed and/or refused to provide Plaintiff with indemnity for Granite Re's Claims pursuant to the Indemnification.

94.     That by their failure and/or refusal to provide indemnity for or the defense of Granite Re's Claims, Defendants have failed and/or refused to perform their obligations under the Indemnity.

95.     That despite numerous requests by Plaintiffs for performance by Defendants pursuant to the terms of the Indemnification, specifically for the provision of indemnity for and the defense of Granite Re's Claims, Defendants continue to fail and/or refuse to comply with the terms of the Indemnification.

96.     That as a direct and proximate result of the breach of the Indemnification by Defendants set forth above, Plaintiffs have suffered and continue to suffer damages, including but not limited to the defense of Granite Re's Claims in a total amount yet to be determined, as well as any resulting judgment.

WHEREFORE, Plaintiffs pray for the Court's entry of judgment against Defendants, jointly and severally, on the allegations set forth in the Fifth Cause of Action, above, for all or part of any sums that may be adjudged against Plaintiffs in Granite Re's Claims and for all costs and attorney fees incurred by Plaintiffs in defending themselves against Granite Re's Claims, for the costs of this action, and for such other relief as the Court deems proper.

## SIXTH CAUSE OF ACTION
### Breach of Contract

97.     That for the Sixth Cause of Action asserted against Defendants, H&Q incorporates paragraphs 1 through 96 of this Complaint, above, as if fully set forth herein.

98.     That pursuant to the Agreement to Restructure, H&Q is entitled to the ownership of certain real property consisting of approximately 5.68 acres (hereinafter the "C-Store Lot") that lies within Lot 1 Double D South Addition, an addition in Douglas County, Nebraska (hereinafter the "Lot 1 Double D South Addition") owned by Defendants.

99.     That at the time the parties entered into the Agreement to Restructure, Defendants were in the process of having Lot 1 Double D South Addition replated to separate therefrom the C-Store Lot and that, as a result of such proceedings and in order to effect the transfer of the C-

Store Lot to H&Q pursuant to the Agreement to Restructure, Defendants executed the Warranty Deed bearing the legal description of the C-Store Lot proposed within the replat of Lot 1 Double D South Addition granting the C-Store Lot to H&Q and that the Warranty Deed was deposited with Omaha National Title & Escrow Company for release pursuant to the terms of the Lot Escrow Agreement.

100.    That upon information and belief, Defendants have failed and/or refused to complete the replatting of Lot 1 Double D South Addition as outlined in the Agreement to Restructure and the Lot Escrow Agreement and that as a result of said failure and/or refusal, Defendants are in breach of the Agreement to Restructure because the Warranty Deed has not been released from escrow and title to the C-Store Lot has not been transferred to H&Q.

101.    That on numerous occasions between October 19, 2011 and the present date, the timeframe during which time Plaintiffs have been the beneficial owner of the C-Store Lot, Defendants have entered upon Lot 1 Double D South Addition, specifically on portions thereof neighboring the C-Store Lot, and created and maintained thereon an illegal landfill by dumping thereon construction debris, including but not limited to concrete chunks, old lumber, drywall and furniture (hereinafter the "Illegal Dump").

102.    That also on numerous occasions between October 19, 2011 and the present date, the timeframe during which time Plaintiffs have been the beneficial owner of the C-Store Lot, Defendants have entered upon Lot 1 Double D South Addition, specifically on portions thereof neighboring the C-Store Lot, and constructed a man-made berm around the Illegal Dump in order to hinder any view of the Illegal Dump created and maintained by Defendants.

103.    That Defendants' conduct set forth in the foregoing paragraphs was willful and intentional and in full knowledge of Plaintiff's beneficial ownership of the C-Store Lot.

104.     That as a result of Defendants' conduct set forth in the foregoing paragraphs, including the creation and maintenance of the Illegal Dump, the City of Omaha has issued upon Plaintiffs various Notices of Violation, true and correct copies of which are attached hereto, labeled Exhibit "I" and incorporated herein by such reference.

105.     That as a further result of Defendants' conduct set forth in the foregoing paragraphs, including the creation and maintenance of the Illegal Dump, the City of Omaha has refused any and all applications to replat Lot 1 Double D South Addition as outlined in the Agreement to Restructure and the Lot Escrow Agreement.

106.     That Defendants, despite repeated demands upon them by H&Q to perform their obligations under the Agreement to Restructure and the Lot Escrow Agreement, have failed and/or refused to complete the replatting of Lot 1 Double D South Addition, and have failed and/or refused to cause the Warranty Deed's release from escrow and the C-Store Lot's transfer to H&Q.

107.     That H&Q is entitled to have Defendants complete the replatting of Lot 1 Double D South Addition pursuant to the Agreement to Restructure and the Lot Escrow Agreement so the Warranty Deed can be released from escrow or, in the alternative, Defendants should be liable for any and all costs and fees incurred by H&Q to complete the replatting of Lot 1 Double D South Addition contemplated in the Agreement to Restructure and the Lot Escrow Agreement and, thus, release the Warranty Deed to H&Q from escrow.

WHEREFORE, H&Q prays for the Court's entry of judgment against Defendants, jointly and severally, on the allegations set forth in the Sixth Cause of Action, above, compelling Defendants to complete the replatting of Lot 1 Double D South Addition pursuant to the Agreement to Restructure and the Lot Escrow Agreement so the Warranty Deed can be released

to H&Q from escrow, or in the alternative, for the costs and fees incurred by H&Q to complete the replatting of Lot 1 Double D South Addition contemplated in the Agreement to Restructure and the Lot Escrow Agreement and, thus, release the Warranty Deed to H&Q from escrow, for the costs of this action and for such other relief as the Court deems proper.

## SEVENTH CAUSE OF ACTION
### Fraudulent Misrepresentation

108.    That for the Seventh Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 107 this Complaint, above, as if fully set forth herein.

109.    That following Defendants' conversion and use of the Intercepted Payments, as alleged in greater detail above, Defendants made the Representations and the Contribution Representations to Plaintiffs, as alleged in greater detail above.

110.    That the Representations and the Contribution Representations were false and that Defendants knew that the Representations and the Contribution Representations were false.

111.    That in light of Defendants' conversion and use of the Intercepted Payments, as alleged in greater detail above, the Representations and the Contribution Representations were fraudulent and/or were made with such reckless disregard for the truth that they constitute fraud.

112.    That Defendants knew that Plaintiffs would rely upon the Representations and the Contribution Representations.

113.    That in reliance upon the Representations and the Contribution Representations, which reliance was reasonable, Plaintiffs continued to provide further financial assistance to the LLC at various times and, ultimately, were forced by the Representations and the Contribution Representations to enter into the Agreement to Restructure.

114.    That the Representations and the Contribution Representations were material to Plaintiffs' decisions to continue to provide further financial assistance to the LLC at various times and, ultimately, to enter into the Agreement to Restructure.

115.    That as a result of the actions and misrepresentations of Defendants, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, on the allegations set forth in the Seventh Cause of Action, above, in an amount to be determined at trial, as well as pre- and post-judgment interest thereon at the highest legal rate, compensatory damages for Doll's fraud in a fair and reasonable amount to include Plaintiffs' special damages and general damages, for the costs of this action, and for such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION
### Conversion

116.    That for the Eighth Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 115 of this Complaint, above, as if fully set forth herein.

117.    That during H&Q's ownership of a majority of membership units within the LLC, the LLC was a close limited liability company.

118.    That during H&Q's ownership of a majority of membership units within the LLC and without the knowledge or consent of Plaintiffs, Doll intentionally converted  the Intercepted Payments for his own personal use by depositing the Intercepted Payments into Account No. 121224 and then transferring the Intercepted Payments from Account No. 121224 to Account No. 119992 for Doll's personal use.

119.    That during H&Q's ownership of a majority of membership units within the LLC and while Doll was engaged in intercepting payments from the LLC's customers and using such

intercepted funds for his personal use, all as set forth in the foregoing paragraphs, Doll, on various occasions, made the Representations to H&Q, Houlton and Quandahl.

120.    That Doll's conversion of the Intercepted Payments from the LLC's customers deprived H&Q, as a member of the LLC, of the possession and use of the customer payments for the operations of the LLC, including payments to the LLC's creditors, and caused the LLC to experience serious financial problems.

121.    That Doll further diverted and converted cash and other assets that were the property of the LLC to the Doll Companies, including NLS, for the payment of the Doll Companies' operating expenses.

122.    That as a result of Defendants' actions, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, on the allegations set forth in the Eighth Cause of Action, above, in an amount to be determined at trial, as well as pre- and post-judgment interest thereon at the highest legal rate, compensatory damages for Defendants' fraud in a fair and reasonable amount to include Plaintiffs' special and general damages, for the costs of this action, and for such other relief as the Court deems proper.

### NINTH CAUSE OF ACTION
### Conspiracy

123.    That for the Ninth Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 122 of this Complaint, above, as if fully set forth herein.

124.    That Defendants conspired and agreed to convert cash and other assets to themselves which was the property of Plaintiffs.

125.    That such conspiracy was accomplished through the underlying overt acts as previously described herein.

126.    That as a direct and proximate result of such conspiracy the Plaintiffs have suffered damages as set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, on the allegations set forth in the Ninth Cause of Action, above, in an amount to be determined at trial, as well as pre- and post-judgment interest thereon at the highest legal rate, for the costs of this action, and for such other relief as the Court deems proper.

## TENTH CAUSE OF ACTION
### Breach of Fiduciary Duty

127.    That for the Tenth Cause of Action asserted against Defendants, Plaintiffs incorporate paragraphs 1 through 126 of this Complaint, above, as if fully set forth herein

128.    That the Doll Companies are the alter ego of Doll.

129.    That Defendants are a fiduciary with respect to their operation and control of the LLC.

130.    That Defendants owed Plaintiffs a fiduciary duty to act in good faith and fair dealing and that Defendants breached that fiduciary duty by intentionally converting the Intercepted Payments for their own use.

131.    That as a result of Defendants' actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, on the allegations set forth in the Tenth Cause of Action, above, in an amount to be determined at trial, as well as pre- and post-judgment interest thereon at the highest legal rate, compensatory damages for Defendants' breach in a fair and reasonable amount to include Plaintiffs' special damages and general damages, for the costs of this action, and for such other relief as the Court deems proper.

## JURY DEMAND AND PLACE OF TRIAL DESIGNATION

Plaintiffs hereby demand a trial by jury on all issues so triable and that such trial be held

in Omaha, Nebraska.

DATED this 30th day of January, 2013.

> H & Q PROPERTIES, INC., a Nebraska
> corporation, MARK HOULTON and
> JOHN QUANDAHL, Plaintiffs
>
> By: s/Justin D. Eichmann
>     D.C. Bradford - #10402
>     Ryan J. Dougherty - #22137
>     Justin D. Eichmann - #22405
>     BRADFORD & COENEN LLC
>     1620 Dodge Street, Suite 1800
>     Omaha, Nebraska 68102-1505
>     (402) 342-4200 Telephone
>     (402) 342-4202 Facsimile
>     wbradford@bradfordcoenen.com
>     rdougherty@bradfordcoenen.com
>     jeichmann@bradfordcoenen.com
>     *Attorneys for Plaintiffs*