**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| H & Q PROPERTIES, INC., a Nebraska corporation; JOHN QUANDAHL; and MARK HOULTON; | CASE NO. 8:13CV38 |
| **Plaintiffs,** | **MEMORANDUM AND ORDER** |
| **vs.** | |
| DAVID E. DOLL;  DOUBLE D PROPERTIES, L.L.C., a Nebraska limited liability company;  DDE, INC., a Nebraska corporation;  HNGC, INC., a Nebraska corporation;  NEBRASKA LOWBOY SERVICES, INC., a Nebraska corporation;  DOUBLE D EXCAVATING, INC., an Iowa corporation;  LOAD RITE EXCAVATING, L.L.C., a Nebraska limited liability company;  DOLL CONSTRUCTION, L.L.C, a Nebraska limited liability company;  NEW ERA EXCAVATION COMPANY, a Nebraska corporation; and  MALVERN TRUST & SAVINGS BANK, an Iowa state-chartered bank; | |
| **Defendants.** | |

This matter is before the Court on four Motions to Dismiss for Failure to State a Claim. The first Motion (Filing No. 125) was filed by Defendants DDE, Inc. ("DDE"); David E. Doll ("Doll"); Double D Excavating, Inc. ("DDE Iowa"); Double D Properties, LLC ("DDP"); HNGC, Inc. ("HNGC"); and Nebraska Lowboy Services, Inc. ("NLS"). The second Motion (Filing No. 129) was filed by Defendant Malvern Trust & Savings Bank ("Malvern Bank"). The third Motion (Filing No. 131) was filed by Doll Construction ("DC") and New Era Excavation Company ("New Era"). The fourth Motion (Filing No. 148) was filed by Defendant Load Rite ("Load Rite").  Also before the Court is the Alternative Motion for Leave to File Second Amended Complaint (Filing No. 149), filed by H & Q

Properties, Inc. ("H&Q"), Mark Houlton ("Houlton"), and John Quandahl ("Quandahl") (collectively "Plaintiffs"). For the reasons discussed below, the Motions to Dismiss will be granted, and the Motion for Leave to Amend will be denied. Plaintiffs' Amended Complaint (Filing No. 80) will be dismissed, with prejudice.

## FACTUAL BACKGROUND

For purposes of the pending motions to dismiss, all well-pled facts alleged in the Amended Complaint (Filing No. 80) are accepted as true, though the Court need not accept the Plaintiffs' conclusions of law.  The following is a summary of those factual allegations.

## I.    Parties' Relationship

Plaintiff H&Q is owned by Houlton and Quandahl.  Between April 9, 2010, and October 19, 2011, Double D Excavating, LLC (the "LLC") was a Nebraska limited liability company whose members were H&Q, DDP, DDE, and HNGC.[1]  Prior to April 9, 2010, the LLC was known as "Doll Excavating, L.L.C." On May 23, 2011, H&Q, Houlton, and Quandahl entered into an "Agreement to Restructure" with Doll and several companies owned and managed by Doll: DDP, DDE, HNGC, NLS, DDE Iowa, Load Rite, DC, and New Era (collectively the "Doll Companies"). Plaintiffs, Doll, and the Doll Companies agreed to restructure the assets and liabilities of the LLC, for the purpose of acquiring H&Q's membership units in the LLC. (*See* Filing No. 1-1.)

Plaintiffs allege that Doll and the Doll Companies failed to perform their obligations outlined in the Agreement to Restructure prior to August 1, 2011, and, as a

---

[1] It is unclear from the Amended Complaint when H&Q acquired its interest in the LLC. For purposes of the pending Motions, the Court will assume that its interest began on April 9, 2010.

2

result, a dispute arose between Plaintiffs, Doll, and the Doll Companies regarding the liquidation of the LLC. On October 19, 2011, Plaintiffs, Doll, and the Doll Companies entered into various agreements in an attempt to resolve their disputes. As part of the attempt to resolve their disputes, H&Q transferred its membership interests in the LLC to various Doll Defendants.

## II.   Defendants' Alleged Misconduct

On March 2, 2010, without Plaintiffs' knowledge, Defendants[2] opened account number 121224 ("Account No. 121224") with Malvern Bank in the name of "Double D Excavating."[3] On the same day, Defendants deposited a check made payable to the LLC into Account No. 121224. The LLC did not authorize the establishment of Account No. 121224, and at the time the check was deposited Plaintiffs owned a majority share of the LLC. Malvern Bank did not require presentation of any organizational documents for the opening of the account, and when Malvern Bank opened the account it designated "Double D Excavating" as a for-profit corporation.  Also on March 2, 2010, Defendants opened account number 119992 ("Account No. 119992") at Malvern Bank in the name of "David E. Doll." The LLC did not authorize Defendants to establish Account No. 119992.

Subsequent to establishing Account No. 121224, from before June 1, 2011, and continuing after July 26, 2011, Defendants received payments from the LLC's customers ("customer payments") and deposited them in Account No. 121224. The LLC

---

[2] The Amended Complaint refers to the Defendants collectively.

[3] The proposed Second Amended Complaint states that on or about January 5, 2012, Doll and the Doll Companies changed title for Account No. 121224 from "Double D Excavating" to "Nebraska Lowboy Services, Inc."  (Filing No. 149-1 ¶ 76b.)

did not authorize the deposit of customer payments into Account No. 121224. Malvern Bank consented to the deposit of the payments into Account No. 121224.

The Amended Complaint cites several occasions from June 3, 2011, to July 19, 2011, when Defendants transferred funds from Account No. 121224 to Account No. 119992 without Plaintiffs' knowledge or consent.[4] The LLC did not authorize the transfer of the customer payments to Account No. 119992.  Malvern Bank consented to the transfer of the customer payments.

Without Plaintiffs' consent, Defendants co-mingled the customer payments in Account No. 119992 with funds belonging to Doll and/or the Doll Companies. Doll used the co-mingled funds transferred to Account No. 119992 for personal expenses and for Doll Company's operating expenses. The Amended Complaint lists several occasions when such use was alleged to have occurred from May 28, 2011, through July 22, 2011.

During the time the Defendants deposited and transferred the customer payments, Doll represented to Plaintiffs that the LLC was having serious financial problems. Doll made representations that the LLC could not meet its operating expenses and that Plaintiffs' financial assistance was necessary for the LLC to continue operations. Doll represented that Plaintiffs would need to contribute additional capital to the LLC to protect the Plaintiffs' investment. Doll and the Doll Companies contributed a portion of the funds from Account No. 119992 back to the LLC, and represented to

---

[4] The proposed Second Amended Complaint alleges that Defendants disclosed the existence of the accounts to Plaintiffs, at the latest, in August of 2011. (Filing No. 149-1 ¶ 67.)

4

Plaintiffs that these were fresh capital contributions made by Doll to the LLC.[5]  Plaintiffs allege that these representations were false, and that Plaintiffs acted upon the representations by continuing to invest capital into the LLC.

## PROCEDURAL BACKGROUND

The Amended Complaint asserts ten different causes of action. More particularly, those causes of action are: 1) violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., based on bank fraud, against Defendants, jointly and severally; 2) violation of RICO based on mail fraud against Defendants, jointly and severally; 3) violation of RICO based on wire fraud, against Defendants, jointly and severally; 4) breach of contract against Doll; 5) indemnification against Doll and the Doll Companies; 6) breach of contract against Doll and the Doll Companies; (7) fraudulent misrepresentation against Doll and the Doll Companies; 8) conversion against Defendants, jointly and severally; 9) conspiracy against Defendants, jointly and severally; and 10) breach of fiduciary duty against Doll and the Doll Companies.  Each of the Defendants has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## STANDARDS OF REVIEW

I.    **Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint 'need not include detailed factual allegations.'"  *Bradley Timberland Res. v.*

---

[5] These statements Doll made to Plaintiffs will be referred to in this Memorandum and Order as the "contribution representations."

*Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013) (quoting *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629 (8th Cir. 2010)). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Bell Atlantic Corp v. Twombly* 550 U.S. 544, 555 (2007)). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 535 (quoting *Twombly* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) *cert. denied*, 133 S. Ct. 2354 (U.S. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))(internal quotation marks omitted).

        "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010))(internal quotation marks omitted). "[L]egal conclusions can provide the framework of a complaint" but "must be supported by factual allegations," *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 679), that "raise a right to relief above the speculative level." *Id.* at 1014 (quoting *Twombly,* 550 U.S. at 555). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*,

6

550 U.S. at 555-556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  However, "to withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to state a claim of relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (internal quotation marks omitted) (citing *Twombly* at 547).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.    Rule 9(b)

The standard of review applicable to pleading fraud is relevant to this case. Plaintiffs have pled three causes of action alleging RICO violations based on the predicate acts of bank fraud, mail fraud, and wire fraud. "The particularity requirements of Rule 9(b) apply to allegations of . . . fraud . . . when used as predicate acts for a RICO claim." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (citing  *Flowers v. Cont'l Grain Co.*, 775 F.2d 1051, 1054 (8th Cir.1985)). However, the particularity requirements of Rule 9(b) do not apply to allegations of the other elements of a RICO claim.  *See Abels v. Farmers Commodities Corp.*, 259 F.3d

7

910, 919 (8th Cir. 2001).  (stating "[t]here are two issues here that should be kept distinct: whether the plaintiffs have sufficiently pleaded acts of racketeering, and whether those alleged acts can be said to form a pattern," and that Rule 9(b) applies only to allegations of predicate acts involving fraud).

"Rule 9(b)'s 'particularity requirement demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).  A party must "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result" to satisfy Rule 9(b)'s particularity requirements.  *Id.* (citing *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir. 2005)). "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Id.* (citing *Costner*, 317 F.3d at 888).

**DISCUSSION**

**I.     RICO Claims**

Plaintiffs' first three causes of action allege generally that Defendants committed RICO violations through a pattern of racketeering activity. RICO prohibits "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A civil claim under "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action

8

that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). "To have standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." *Asa-Brandt, Inc. v. ADM Investor Services, Inc.*, 344 F.3d 738, 752 (8th Cir. 2003) (citing *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.,* 187 F.3d 941, 951 (8th Cir. 1999)).

Assuming, without deciding, that Plaintiffs have standing to assert RICO claims against Defendants,[6] the Amended Complaint fails to allege the elements of a RICO claim. To establish a civil claim for damages under RICO, a plaintiff must prove the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also* 18 U.S.C. § 1962(c). "The requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). A plaintiff's failure to establish "any one element of a RICO

---

[6] Plaintiffs claimed injuries are:

. . . the amount of their continued contributions to the LLC as a result of the Intercepted Payments, the Representations and the Contribution Representations, and the resulting reduction in value of the LLC and the loss of Plaintiffs' investment therein as a result of the Intercepted Payments, the Representations, the Contribution Representations and ultimately, the Agreement to Restructure.

(Filing No. 80 ¶¶ 75, 88, 101; Filing No. 149-1 ¶¶ 90, 105, 120.)

It is doubtful that Plaintiffs can assert an injury based on RICO on these bases because the Eighth Circuit has held that, "[a] shareholder may not maintain an action for an injury to a corporation resulting in a diminution in the value of shares under RICO absent a showing of individual and direct injury to the shareholder." *Brennan v. Chestnut*, 973 F.2d 644, 648 (8th Cir. 1992) (citing *Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir. 1989)).

claim means the entire claim fails." *Id.* The Defendants contend that Plaintiffs have failed to state their RICO claims under Rule 12(b)(6), and have failed to plead with the particularity that Rule 9(b) requires.[7] The Court concludes that both the Amended Complaint and proposed Second Amended Complaint fail to allege conduct of a RICO enterprise, and fail to allege that Defendants engaged in racketeering activity.

### A.    Conduct of a RICO Enterprise

Even if Plaintiffs have alleged the existence of a RICO enterprise,[8] they have not alleged how each Defendant engaged in the conduct of the enterprise. To establish the conduct element of their RICO claims, Plaintiffs must show "conduct by the defendants in association with the enterprise." *In re Sac & Fox Tribe of the Miss. in Iowa/Meskwaki Casino Litig.,* 340 F.3d 749, 767 (8th Cir. 2003). To plead this element, a plaintiff must demonstrate that the defendant "has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993). "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179 (quoting 18 U.S.C. § 1962(c)). "[I]t is not necessary that a RICO defendant have wielded control over the enterprise, but the plaintiff 'must prove some part in the *direction* . . . of the enterprise's affairs.'"

---

[7] Only certain elements of Plaintiffs' RICO claims are subject to Rule 9(b)'s heightened pleading standard. *See Abels*, 259 F.3d at 919.  Although the Defendants have challenged the Amended Complaint under Rule 12(b)(6) as the mechanism for obtaining dismissal of Plaintiffs' RICO claims under Rule 9(b),[1] the Court will address the elements of Plaintiffs' RICO claims under the appropriate pleading standard.

[8] A RICO enterprise "must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern of racketeering." *Asa-Brandt*, 344 F.3d at 752. Because the vast majority of Plaintiffs' allegations lump the Defendants together, it is difficult to determine whether Plaintiffs have met the requirement of pleading an enterprise. For the sake of brevity, the Court will assume without deciding that the pleadings allege the existence of a RICO enterprise.

*Handeen,* 112 F.3d 1339, 1348 (8th Cir. 1997) (quoting *United States v. Darden,* 70 F.3d 1507, 1543 (8th Cir.1995)). The Court must evaluate whether the Amended Complaint alleges that each defendant had some part in the direction of the enterprise's affairs.

### 1. Malvern Bank

Plaintiffs have not alleged in the Amended Complaint or the Second Amended Complaint that Malvern Bank's participation in the allegedly fraudulent scheme amounted to anything other than run-of-the-mill professional services. "Although § 1962(c) liability is not limited to those with a formal position within the enterprise . . . , '§ 1962(c) cannot be interpreted to reach complete outsiders because liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (internal marks omitted) (emphasis in original). For example, in *Dahlgren*, the Eighth Circuit held that a bank, who served as primary lender to a feedlot, did not direct the feedlot's operations or management during the time period in which plaintiffs allegedly were injured by the bank's purported pattern of racketeering activity. *Id.* at 690. The Eighth Circuit reasoned that courts "must carefully distinguish between the bank conducting its own affairs as creditor, and the bank taking additional steps as an outsider to direct the operation or management of its customer, the RICO enterprise." *Id.* "A bank's financial assistance and professional services may assist a customer engaging in racketeering activities, but that alone does not satisfy the stringent operation and management test of *Reves*." *Id.* (internal marks omitted).

11

Plaintiffs allege that Malvern Bank knew of, and consented to, opening accounts in the name of the LLC, depositing checks, transferring funds, and issuing checks to Doll and the Doll Companies. None of these allegations suggests that Malvern knew that these routine banking activities were unauthorized, let alone fraudulent. The only suggestion of improper motive on the part of Malvern Bank in either the Amended Complaint or proposed Second Amended Complaint is that Doll was personally acquainted with the president of Malvern Bank, and that the president helped Doll "float checks" in the past. (*See* Filing No. 149-1 ¶ 25.) The Amended Complaint fails to allege any nexus between Doll's personal acquaintance within Malvern Bank's president and Malvern Bank's alleged operation or management of a RICO enterprise.

The proposed Second Amended Complaint does not cure these deficiencies. Although the proposed Second Amended Complaint adds allegations about Malvern Bank's administrative role with regulatory and audit issues on the accounts, there is no indication that Malvern Bank knew of any illicit activity, nor is there any indication that its services were anything but routine. As noted above, "[f]urnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*." *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997).[9]

---

[9] *See also Reves,* 507 U.S. at 185 (applying the operation or management test and holding that the defendant-accounting firm's conduct was insufficient to impose RICO liability when the accounting firm prepared audits, reviewed transactions, certified records as fair representations of the enterprise's financial status and presented reports to the enterprise's directors and shareholders); *Walter v. Drayson,* 538 F.3d 1244, 1248–49 (9th Cir. 2008) (holding that an attorney's provision of services did not satisfy the operation or management test); *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 727–28 (7th Cir. 1998) (finding a doctor and two other defendants not liable because "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)"); *Nolte v. Pearson,* 994 F.2d 1311, 1317 (8th Cir. 1993) (holding that the

Nothing in the proposed Second Amended Complaint suggests that Malvern Bank provided anything other than routine banking services. Accordingly, Plaintiffs have not alleged that Malvern Bank participated in the operation of a RICO enterprise.

### 2.    *The Doll Companies*

The Amended Complaint and proposed Second Amended Complaint both fail to describe how each individual Defendant conducted the affairs of a RICO enterprise. As noted above, Plaintiffs must establish the elements of their RICO claims "as to each individual defendant." *Craig Outdoor Advertising, Inc.*, 528 F.3d at 1027-28 (citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise.") (citations omitted). Because Plaintiffs' RICO claims are based on predicate acts of fraud, they must allege each Defendant's participation in the enterprise under the heightened pleading standard of Rule 9(b). *See Crest Const. II*, 660 F.3d at 358; *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428-29 (8th Cir. 2009). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (alteration in original) (internal quotation marks omitted).

---

defendant-attorneys' conduct was insufficient to impose RICO liability when the attorneys prepared an opinion letter and accompanying memorandum advising investors of federal income tax consequences, a defense letter agreeing to render legal assistance to investors and two documents explaining whether changes in federal tax laws would have a material effect on an investor's income taxes).

With respect to the "Doll Companies," both the Amended Complaint and the proposed Second Amended Complaint fail to apprise each defendant of his or its specific wrongdoing. Although some of the allegedly fraudulent statements are specifically attributed to Doll or Doll's attorney, the vast majority of the allegations group all the Defendants together. Such allegations fail to provide notice to the Defendants of their individual roles in perpetrating any predicate acts of fraud, and fail to allege how each individual Defendant participated in the RICO enterprise. Accordingly, the conduct element of Plaintiffs' RICO claims is not established in the Amended Complaint as to the Doll Companies. This deficiency is not cured by the allegations in the proposed Second Amended Complaint, as the allegations continue to group the Defendants together.

### B.    Racketeering Activity

Even if the proposed Second Amended Complaint did allege the existence and continued conduct of a RICO enterprise, both the Amended Complaint and the proposed Second Amended Complaint fail to allege that Defendants engaged in racketeering activity.  Plaintiffs allege bank fraud, mail fraud, and wire fraud as predicate acts to their RICO claims. The heightened pleading standard of Rule 9(b) applies when mail, bank, and wire fraud are used as a basis for a RICO claim. *Murr Plumbing, Inc.,* 48 F.3d at 1069. Under RICO, the "circumstances" that must be pled with particularity include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels*, 259 F.3d at 920; *Murr Plumbing,* 48 F.3d at 1069; *see also DeWit v. Firstar*

14

*Corp.,* 904 F.Supp. 1476, 1524 (N.D.Iowa 1995). Plaintiffs have not sufficiently pled bank, mail, or wire fraud.

### 1.    *Bank Fraud*

Plaintiffs' claims using bank fraud as a predicate act fail because Plaintiffs have not alleged fraud against a financial institution. The bank fraud statute, 18 U.S.C. § 1344, makes it a crime "to execute or attempt to execute a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . ." *United States v. Staples*, 435 F.3d 860, 866 (8th Cir. 2006). The Eighth Circuit has read this statute in the disjunctive, explaining that bank fraud is committed where a defendant has (1) defrauded a financial institution, or (2) caused or attempted to cause some loss to a financial institution. *Id.* at 867 (holding that it was doubtful a defendant could be convicted of bank fraud where there was no evidence that the defendant intended to defraud a bank).

The Eighth Circuit has rejected the notion that bank fraud may be found where a "defendant merely intends to defraud someone, and then causes a bank, as an unwitting instrumentality, to transfer funds pursuant to a fraudulent scheme." *Id.* (citing *United States v. Everett*, 270 F.3d 986, 991 (6th Cir. 2001)). The Eighth Circuit explained that the purpose of the bank fraud statute "is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions." *Id.* (citing *United States v. Davis,* 989 F.2d 244, 246-47 (7th Cir. 1993)).

It is presumed that Plaintiffs allege bank fraud on the basis that Defendants used a bank and bank accounts to defraud the Plaintiffs, or that Malvern Bank assisted in the fraud. The allegations do not support a claim that Defendants' predicate acts constituted bank fraud merely because the acts involved a bank. Plaintiffs have not alleged they are a financial institution, nor have they alleged fraud against a financial institution. Plaintiffs' claims are thus outside the intended reach of the bank fraud statute. Accordingly, Plaintiffs lack standing to assert RICO claims based on alleged bank fraud.

### 2.    *Mail and Wire Fraud*

Plaintiffs have not alleged mail and wire fraud with particularity. "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402, 406-07 (8th Cir. 1999) (citing *Murr Plumbing, Inc.,* 48 F.3d at 1069). "[T]he term 'scheme to defraud' connotes some degree of planning by the perpetrator, [and] it is essential that the evidence show the defendant entertained an intent to defraud." *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 991 (8th Cir.1989) (quoting *United States v. McNeive,* 536 F.2d 1245, 1247 (8th Cir. 1976)).

Plaintiffs fail to allege a scheme to defraud with particularity. Plaintiffs allege that Defendants established Account No. 121224 without Plaintiffs' knowledge or authorization, and deposited customer payments to the LLC in Account No. 121224. Plaintiffs allege that "upon information and belief, the majority of such deposits were accomplished via interstate mailing from Doll and/or the Doll Companies to Malvern

16

Bank utilizing the U.S. mail." (Filing No. 80 ¶ 39; *see also* Filing No. 149-1 ¶ 47.) Defendants then transferred customer payments from Account No. 121224 to Account No. 119992, without Plaintiffs' knowledge or consent. The allegations of wire fraud are based on "wire communications" transferring customer payments from Account No. 121224 to Account No. 119992. (*See e.g.* Filing No. 149-1 ¶ 51.) As a result of the transferred payments, the customer payments were co-mingled with funds belonging to Doll. Plaintiffs allege that these co-mingled funds were used to fund the Doll Companies' operating expenses and for Doll's personal expenses. Plaintiffs allege that Doll also represented that a portion of the co-mingled funds was fresh capital contributions to the LLC, thus inducing Plaintiffs to continue invest in the LLC.

While Plaintiffs allege that they were majority share members in the LLC, they have not alleged that their authorization was required for creation of LLC accounts, or that such authorization was required for the transfer money from accounts belonging to the LLC.  Plaintiffs' allegations are also devoid of any suggestion that Defendants attempted to conceal the existence of either account from the Plaintiffs. In fact, according to the Plaintiffs, Defendants specifically revealed both accounts, at the latest, in August of 2011. (Filing No. 149-1 ¶ 67.) In sum, there are no allegations from which the Court can infer that Doll fraudulently sought to deprive Plaintiffs of any right to the customer payments, or that Doll and/or the Doll Companies lacked any right to the customer payments transferred to Account No. 119992. Thus, the Court cannot conclude that Doll's representations were false or part of a fraudulent scheme.

Even if Doll's actions breached the parties' agreement, or breached a fiduciary duty owed to the LLC, such actions would be insufficient to establish RICO liability. *See*

17

*Manion v. Freund,* 967 F.2d 1183, 1186 (8th Cir.1992) ("breach of fiduciary duty is not one of the specified state crimes listed in the definition of 'racketeering activity,' 18 U.S.C. § 1961(1), and thus could not have supported a civil RICO claim"); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir. 1990) (holding that breach of contract does not constitute a scheme to defraud). *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 529 (4th Cir. 1987) (stating, where the plaintiffs had asserted mail and wire fraud as predicate acts, that "under no circumstances could a breach of fiduciary duty constitute a pattern of racketeering activity."). As noted above, RICO does not cover all instances of wrongdoing. *Crest Const. II*, 660 F.3d at 353. Absent more, the Court cannot conclude that creating Account No. 121224, transferring money to Account No. 119992, or inducing continued contributions was part of a fraudulent scheme.[10]

It is recognized that the scienter element of fraud need only be alleged generally. Fed. R. Civ. P. 9(b). Nevertheless, pleadings of intent must satisfy the pleading requirements of Rule 8(a)(2). *See Iqbal,* 556 U.S. at 678. Accordingly, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 644 (8th Cir.1995). Even if the deposits, transfers, and eventual co-mingling of customer payments were unauthorized, Plaintiffs have not presented allegations to support an

---

[10] As stated above, to the extent Plaintiffs allege an injury based on misappropriation of customer payments, Plaintiffs have not been injured. any injuries to Plaintiffs that flow indirectly from the injury to the LLC have no proximate causal relationship with the Defendants' alleged wrongdoing. *See Brennan*, 973 F.2d at 648; *Craig Outdoor Advertising, Inc.,* 528 F.3d at 1024–25 (holding shareholder lacked standing to pursue RICO claim for alleged injuries to corporation).

inference of Defendants' intent to defraud.[11]   Other than labels and conclusions, Plaintiffs fail to provide any indication that the deposits and transfers were done with fraudulent intent, or directed at inducing the Plaintiffs to commit additional funds to the LLC.[12]  The Court cannot infer a fraudulent scheme or fraudulent intent from either the Amended Complaint or proposed Second Amended Complaint. Accordingly, Plaintiffs fail to allege racketeering activity on the basis of wire and mail fraud.

## II.    Futility of Amendment

Plaintiffs will not be given leave to amend. Leave to amend shall be freely granted "when justice so requires." Fed. R. Civ. P. 15(a). "However, denial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Crest Const. II*, 660 F.3d at 358 (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 557–58 (8th Cir. 2006) (internal quotation marks omitted). As noted throughout this Memorandum and Order, the Court has thoroughly considered both the Amended Complaint and the proposed Second Amended Complaint. This analysis has demonstrated that the proposed Second Amended Complaint fails to cure the deficiencies of the Amended Complaint, despite Plaintiffs being made aware of the potential deficiencies. Having considered Plaintiffs' proposed amendments, the Court

---

[11] The Court need not address whether Doll's misrepresentations to Plaintiffs, by themselves, constituted predicate acts because neither pleading at issue alleges that Doll made the misrepresentations through use of the mail or wires. Thus, use of the mail and wires in the deposits and transfers serve as the entire basis for Plaintiffs' RICO claims.

[12] Although Doll's later alleged misrepresentations may suggest fraudulent intent, there is no indication that such misrepresentations were connected to the use of mail or wires.

concludes that leave to amend would be futile. Accordingly, Plaintiffs' alternative Motion to Amend will be denied.

## III.   State Law Claims

Plaintiffs' remaining claims are based on state law. "[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. *See* [28 U.S.C.] § 1367(a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Const. II*, 660 F.3d at 359 (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009). Although some of the Defendants argued the merits of the state law claims, and Plaintiffs responded to them, Plaintiffs have not objected or directly responded to Defendants' request that the Court decline supplemental jurisdiction over Plaintiffs' state law claims. The Court declines to exercise its supplemental jurisdiction over the remaining state law claims.

## CONCLUSION

Plaintiffs failed to allege the necessary elements of their RICO claims, and specifically failed to do so with the requisite particularity required by Rule 9(b). Further amendment would be futile because the proposed Second Amended Complaint fails to cure the deficiencies in the Amended Complaint. Plaintiffs' RICO claims will be dismissed, and the Court will decline to exercise supplemental jurisdiction over their state law claims. Accordingly,

IT IS ORDERED:

1.      The Motions to Dismiss (Filing Nos. 125, 129, 131, and 148), are granted;

2.      This case is dismissed, with prejudice as to Plaintiffs' first three causes of

action filed under Racketeer Influenced Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 et seq., and without prejudice as to its

remaining claims;

3.      The Alternative Motion for Leave to File Second Amended Complaint

(Filing No. 149), is denied; and

4.      A separate judgment will be entered.

Dated this 26th day of June, 2014.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge